## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF IOWA
### EASTERN DIVISION

| | | |
|---|---|---|
| JAMES L. RADERS, M.D., | ) | Case No. _____ |
| Plaintiff, | ) | |
| vs. | ) | **COMPLAINT & JURY DEMAND** |
| DEAN R. PRICE; and RSM U.S., L.L.P., | ) | |
| Defendants. | ) | |

COMES NOW Plaintiff, James L. Raders, by and through its undersigned counsel, and for his Complaint against Defendants, Dean R. Price and RSM US LLP, an Iowa limited liability partnership (collectively, the "Defendants"), states and alleges as follows:

### JURISDICTION

1. The Court has jurisdiction of this matter pursuant to 28 U.S.C § 1332. The parties are citizens of different states, and the matter in controversy exceeds the sum or value of $75,000, exclusive in interest and costs.

### PARTIES

2. Plaintiff James L. Raders, M.D. ("Raders"), is a natural person who is domiciled in and is a citizen of the State of Florida, with his principal residence in the town of Melbourne, Florida.

3. Defendant Dean R. Price ("Price") is a natural person who is domiciled in and is a citizen of the State of Iowa, with his principal residence in the city of Iowa City, Iowa.

4. Defendant RSM U.S., L.L.P. (formerly McGladrey, L.L.P., formerly McGladrey Pullen, L.L.P.) ("RSM") is an Iowa limited liability partnership with an office in Iowa City, Iowa.

5. At all times material hereto, Defendant Price was a professional accountant licensed under the laws of the State of Iowa and was also a partner with Defendant RSM, a national public accounting firm.

## GENERAL ALLEGATIONS

6. In 2016, Raders sought and engaged the professional services of Defendants Price and RSM. Raders sought tax advice for the specific purpose of determining whether and how to provide investment funds to another of Price and RSM's clients: a real estate developer named Michael D. Frantz.

7. At this same time, Raders sought and engaged the services of Defendants Price and RSM in preparation of accounting services and tax return filings.

8. At all times material hereto, Price represented to Raders that Price was a licensed professional accountant with RSM, with an office located in Iowa City, Iowa. Price represented to Raders that Price had the knowledge and skill to provide professional accounting services to fulfil Raders's needs.

9. At all times material hereto, and for many years prior, Price and RSM had represented Michael D. Frantz as well as a number of his real estate companies, including at least the following: (i) Frantz Community Investors, L.L.C. ("FCI"), an Iowa limited liability company , and (ii) Frantz Ventures, L.L.C., ("Ventures"), an Iowa limited liability company (hereinafter, collectively, "Frantz"). Defendants represented Frantz in connection with both tax advice and accounting services.

10. Frantz had previously received funds from Raders, and Frantz invested those funds in a real estate project for which Price and RSM provided the tax services. Defendants prepared and provided annual K-1 tax information to Raders concerning that project.

2

11. Later, in February and March 2016, Frantz sought additional money from Raders. Frantz told Raders that Frantz would invest Raders's funds in substantial money making ventures. According to Frantz, Defendants Price and RSM would oversee the structuring and transfer of historic tax credits for the ventures. Frantz represented to Raders that Price would represent Raders in future transactions, that Price and RSM were experts in structuring, in order to provide historic and other tax credit benefits.

12. As proposed by Frantz and as understood by Defendants, Raders would provide the funds by liquidating his retirement accounts and transferring those assets to Frantz. Raders understood that this transfer could entail substantial tax consequences.

13. As a result, Frantz, Raders, and Price emailed information to one another regarding the possible future transactions using historic tax credits to offset Raders's anticipated tax liabilities. Price was included in a March 3, 2016 email regarding the requests by Frantz for Raders to deliver funds to Frantz for future investments in tax-sheltered, structured real estate transactions.

14. In March 2016, Raders sent several emails to Price confirming Raders's understanding of tax benefits that Frantz had communicated.  In the same emails, Raders confirmed his reliance on Price's accounting advice.

15. Later communications between Raders to Price confirmed Raders's understanding of the accounting structure for the potential investments. These communications also confirmed that Raders's funds would be used in transactions that Defendants would properly structure in order to protect Raders from tax liabilities.

16. On March 1, 2016, Raders sent an email to Frantz and Price indicating that Raders was frightened to liquidate his funds. Raders needed Price to directly confirm that, if Raders

3

delivered his funds to Frantz, then those funds would be used in Frantz's transactions in a manner to provide Raders with tax credit benefits, which would offset the federal tax liability that would result from Raders liquidating his tax-advantaged retirement accounts. Raders indicated that he would not proceed without Price's specific advice and confirmation.

17. Price and Raders spoke thereafter on March 1, 2016. During the conversation, Price encouraged Raders to send his retirement and life insurance funds to Frantz, and Price further confirmed to Raders that Price would represent Raders in the use of such funds. In addition to substantiating that the tax credits were legitimate, Price also assured Raders that RSM would supply sufficient documentation for tax filing purposes such that Raders would successfully offset any tax liability he encountered as a result of liquidating his retirement funds.

18. On March 1, 2016, Price assured Raders that his funds would be invested in tax credits to shelter Raders's tax liability.

19. On March 1, 2016, Price assured Raders that Defendants had structured many such transactions for Frantz in the past.

20. Price further advised Raders *not* to withhold any taxes from either Raders's pre-taxed retirement accounts or from Raders's life insurance policy on the basis that "they" (Frantz and Defendants) would utilize the funds in a manner to offset the tax liability. Price further indicated that they had "done this before," referring to the sheltering of tax liabilities through tax credit investments.

21. In early March 2016, based on the advice given by Defendants to Raders, Raders liquidated his life savings in retirement accounts and "cashed out" his life insurance

policy in the total amount of $2,482,453. Raders directed those amounts to one of Frantz's accounts, at Price's direction. Price indicated that one of Frantz's financial accounts would be used for receipt of the funds while "they" determined how the funds would be invested.

22. In the subsequent months, Raders emailed questions to Price regarding the documentation of the transfer of his funds. On March 7, 2016, Price forwarded to Raders by email a simplified promissory note confirming that Frantz owed Raders $3,000,000.

23. On March 5, 2016, Price (through his administrative assistant) sent Raders a formal engagement letter for Raders's tax return filing.

24. During the fall of 2016, Price continued to perform the professional accounting and tax work for Frantz. RSM had also filed the tax returns for Frantz and provided the K-1 tax reporting filings for FCI and Ventures for prior years, including 2015.

25. Defendants filed Raders's 2015 tax return, as well.

26. Frantz verbally promised Raders to pay a minimum interest on Raders's funds until those funds were invested in an investment that Raders approved and a formal arrangement documented. However, Frantz failed to pay Raders the agreed interim payment amounts.

27. On February 23, 2017, Price sent an email to Raders's sister saying:

> "Please be aware that RSM US, LLP and I no longer represent Mike Frantz or any of the entities that he has a controlling ownership interest in. Jim Raders should engage another accounting firm to provide tax advice and to prepare his 2016 tax return. Dean Price."

28. Frantz never paid Raders and never accounted for the use of Raders's funds. Raders brought action against Frantz in Florida in 2018, and Frantz filed Chapter 7 Bankruptcy Protection in Milwaukee, Wisconsin in April of 2019, which actions remain pending at the time of the filing of this Complaint.

29. Frantz and several of his real estate venture entities were in financial trouble during the time immediately prior to Raders's delivery of his funds to Frantz. In point of fact, Frantz had been sued by multiple parties, including a similar lawsuit by friend of Frantz who had funded over $2,000,000 to Frantz under similar circumstances and false promises, much like those made to Raders.

30. Price knew or should have known that the information being supplied by Frantz to Raders was false and misleading.

31. Price knew or should have known that the ability of Frantz to invest Raders's funds in tax liability-offsetting tax credits was false.

32. Price gave Raders tax advice that was wrong, and Price knew or should have known that Raders would rely on Defendants' representations, tax advice, and tax services to Raders's substantial detriment.

33. Price knew or should have known that Defendants' representation of Raders in connection with Defendants' other, existing Frantz clients was a conflict of interest that would jeopardize the interests of Raders.

34. Price failed to exercise reasonable and customary care in the representation of Raders, the result of which caused Raders to fund all of his life savings to Frantz. Those funds are now lost and have never been repaid.

## COUNT I: *Professional Negligence and Malpractice*

35. Plaintiff restates the above Paragraphs and incorporates the above allegations as if set forth fully herein.

36. Defendants Price and RSM, and each of them, owed Raders a duty to act with reasonable care and skill and in conformance with the applicable standards, practices, and customs

for competent accountants licensed in and practicing in the State of Iowa because (i) Price provided direct and ongoing advice to Raders knowing that Raders would rely on that advice and because (ii) Price was engaged by Raders for tax advice and tax return purposes.

37. Price and RSM failed to provide documentation to satisfy the IRS that appropriate measures were taken and that all requirements were met to offset Raders's tax liability resulting from liquidating his retirement accounts.

38. Defendants Price and RSM, and each of them, breached the duty owed to Raders to act with reasonable professional care and skill in the performance of accounting and tax advice services offered to Raders.

39. As a foreseeable, direct, and proximate result of Defendants' breaches of the aforementioned duties of reasonable care and competence, Plaintiff has suffered harm including economic damages in excess of the jurisdictional minimum of this Court and in amounts to be proven at trial.

**COUNT II:** *Breach of Fiduciary Duty*

40. Plaintiff restates the above Paragraphs and incorporates the above allegations as if set forth fully herein.

41. Defendants Price and RSM, and each of them, owed Raders fiduciary duties as his tax advisors and accountants.

42. Defendants Price and RSM breached their fiduciary duties of loyalty and care by failing to inform Raders of Frantz's financial troubles and by encouraging Raders to fund his money to Frantz, while Defendants knew or should have known that such funds would not be able to be invested in tax-sheltered investments with Frantz.

43. As a foreseeable, direct, and proximate result of Defendants' breaches of the aforementioned duties, Plaintiff has suffered harm including economic damages in excess of the jurisdictional minimum of this Court and in amounts to be proven at trial.

WHEREFORE, Plaintiff James L. Raders respectfully requests that the Court enter judgment in his favor and against Defendants, Dean R. Price and RSM U.S., L.L.P., in the full amount of Plaintiff's claim, together with a further award of punitive damages. Plaintiff further prays for an award of attorney fees and the costs of this action, as well as interest on the judgment from the date of the filing of this Petition, and for any other orders just and proper to afford Plaintiff complete relief in the circumstances.

## JURY DEMAND

COMES NOW the Plaintiff and demands that a jury be empaneled to decide the all issues so triable in this matter.

Respectfully submitted,

DUTTON, DANIELS, HINES, KALKHOFF,
COOK & SWANSON, P.L.C.
*Attorneys for Plaintiff*

BY: _____

David J. Dutton, AT0002192
Joshua M. Moon, AT0011013
Erich D. Priebe, AT0012350
3151 Brockway Road
P.O. Box 810
Waterloo, IA 50704
(319) 234-4471
(319) 234-8029 FAX
Email: DuttonD@wloolaw.com
MoonJ@wloolaw.com
PriebeE@wloolaw.com

i:\lit\raders.jim\pleadings\complaint & jury demand.docx